**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| EDWIN VELEZ, | Case No.: 3:21-cv-00197-ART-CSD |
| Plaintiff | **Order and Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF Nos. 77, 81, 85 |
| DZURENDA, et al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is a motion to dismiss filed by Dr. Roehl Pena (ECF No. 77); a motion to screen Plaintiff's second amended complaint (SAC), or alternatively, a motion to dismiss filed by defendants Drs. Carol Alley, Kim Adamson, and Martin Naughton (ECF No. 81)[1]; and a stipulation filed by the parties to stay responses to the SAC and motions to dismiss pending the court's screening of the SAC (ECF No. 85).

For the reasons set forth below, the motion to screen Plaintiff's SAC is granted, and it is recommended that Plaintiff be permitted to proceed with certain claims in the SAC and that other claims be dismissed. The alternative motion to dismiss filed by Drs. Alley, Adamson, and Naughton, and the motion to dismiss filed by Dr. Pena should be denied. The stipulation filed by the parties to stay the case, including responses to the pending motions to dismiss and

---

[1] The motion was also filed on behalf of the Nevada Department of Corrections (NDOC); however, NDOC is not named a defendant in the SAC.

Dr. Gaulin's responsive pleading pending the court's screening of the SAC (ECF No. 85) is denied as moot.

## I. BACKGROUND

**A. The Original and First Amended Complaint**

Plaintiff is an inmate in custody of the NDOC. During the time period at issue, he was housed at Lovelock Correctional Center (LCC). Plaintiff initiated this action in 2021 by filing an application to proceed *in forma pauperis* and pro se civil rights complaint. (ECF Nos. 1-1, 4.) The court screened the original complaint and dismissed it with leave to amend. (ECF No. 6.) Plaintiff, still pro se, filed a first amended complaint (ECF No. 10), which the court screened in March 2022. At that time, Plaintiff was allowed to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against Dr. McCullin. (ECF No. 11.)

The Attorney General's Office filed a notice indicating they could not accept service for Dr. McCullen because he was not an NDOC employee. (ECF No. 21.) Plaintiff was granted several extensions of time to serve Dr. McCullen, but was unsuccessful.

**B. The Appointment of Counsel**

Plaintiff filed a motion for appointment of counsel. (ECF No. 34.) District Judge Traum held a status conference on July 11, 2023, where she granted Plaintiff's motion for appointment of counsel and referred the matter to the court's pro bono program. (ECF No. 40.) Judge Traum held another status conference on December 14, 2023, noting that pro bono counsel had been identified, and the court was awaiting the entry of an appearance. At that point, Plaintiff represented that he identified the name of the proper defendant. (ECF No. 48.) At a status conference on January 29, 2024, it was noted counsel had cleared the conflict screening, but an appearance had not yet been entered. (ECF No. 50.)

Daniel Mann, Esq., entered an appearance on Plaintiff's behalf on January 31, 2024. (ECF No. 49.) The appointment of counsel became official on February 8, 2024. (ECF No. 52.)

The undersigned held a status conference on February 21, 2024, and Plaintiff was given until March 13, 2024, to file a SAC. (ECF No. 54.) Plaintiff was then granted several extensions of time to file the SAC, which was filed on June 7, 2024. (ECF No. 67.)

**C. The Second Amended Complaint**

The SAC names the following defendants: Dr. Michael Minev, Dr. Martin Naughton, Dr. Kim Adamson, Dr. Michael McKee, Dr. Carol Alley, Dr. Henry Landsman, Dr. Roehl Pena, and Dr. Paul Gaulin.

Dr. Gaulin is alleged to have been a surgeon at Humboldt General Hospital in Winnemucca, Nevada, who operated pursuant to a contract to provide medical serves to NDOC inmates. The SAC alleges that Drs. Minev, Naughton, Adamson, McKee, Alley, Landsman, and Pena were on NDOC's Medical Review Panel (MRP).

Plaintiff alleges that he was working in the LCC kitchen when he was injured, and experienced pain and swelling in his left testicle area. He saw a LCC medical provider on January 19, 2018. An ultrasound was conducted, and Plaintiff was diagnosed with hydrocele—a type of swelling in the scrotum in which fluid collects in the thin sac that surrounds the testicle. The condition was causing Plaintiff severe pain. Plaintiff was referred to an outside provider to perform a hydrocelectomy to remove and repair the hydrocele. The MRP approved the hydrocelectomy to be performed by Dr. Gaulin at Humboldt General Hospital.

Plaintiff avers that Dr. Gaulin had no experience in hydrocelectomy, and this was known to the MRP.

1    On January 20, 2018, Dr. Gaulin performed a hydrocelectomy on Plaintiff where he
2 entered the tunica vaginalis and cautery was performed. However, Plaintiff alleges the tunica
3 vaginalis was not properly excised.

4    On November 20, 2018, Plaintiff experienced severe pain and swelling in the left testicle
5 and was again referred by LCC medical to see Dr. Gaulin, which the MRP approved. Dr. Gaulin
6 drained the hydrocele, but the doctor failed to perform a proper hydrocelectomy to prevent
7 additional fluid from accumulating.

8    The hydrocele returned in February 2019, causing Plaintiff severe pain and swelling. The
9 LCC provider again recommended a hydrocelectomy, and the MRP sent Plaintiff back to Dr.
10 Gaulin. On March 19, 2019, Dr. Gaulin drained the fluid from the hydrocele, but the doctor
11 failed to perform a proper hydrocelectomy to prevent additional fluid from accumulating.

12    On April 29, 2019, Plaintiff reported pain and swelling in the left testicle. The provider
13 again recommended a hydrocelectomy, and the MRP sent Plaintiff to Dr. Gaulin. On May 3,
14 2019, Dr. Gaulin drained the fluid, but the doctor did not perform a proper hydrocelectomy.

15    At a May 15, 2019, follow-up appointment, Dr. Gaulin finally referred Plaintiff for a
16 consultation with a urologist because Plaintiff still had fluid around the left testicle.

17    On May 17, 2019, Plaintiff saw Dr. Roland Chen, a urologist, who determined Plaintiff
18 had a hydrocele, advised that Dr. Gaulin had not properly performed a hydrocelectomy, and
19 submitted a request to LCC that day seeking permission to perform a hydrocelectomy. The MRP
20 waited nearly five months—until October 8, 2019—before approving Dr. Chen's request.

21    When he performed the hydrocelectomy, Dr. Chen diagnosed Plaintiff with a 4 to 5 cm
22 cystic mass of necrotic caseating tissue in the left testicle. As a result of the presence the mass
23 and extreme inflammation, Dr. Chen performed an orchiectomy to permanently remove the left

testicle. Plaintiff alleges it is Dr. Chen's opinion that if the proper hydrocelectomy had been performed at the outset, the left testicle would have been saved.

The SAC asserts a claim for deliberate indifference to serious medical needs under the Eighth Amendment[2] and State law claims for negligence and negligent infliction of emotional distress (NIED).

## II. SCREENING

### A. The Court Will Exercise its Discretion to Screen the SAC

There is debate among the district courts as to whether the court is required to screen amended complaints, and whether the court is required to screen complaints filed by counsel. The Ninth Circuit has not addressed this question. In the court's experience, there are circumstances where it is useful to screen an amended complaint and to screen a complaint filed by counsel, yet in other circumstances, doing so does not serve the court's objective of securing "the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Without making a formal determination on this issue, the court exercises its discretion, in this instance, to screen the SAC filed by counsel. Here, the court's screening analysis overlaps with the issues raised in the motions to dismiss. Screening the SAC will obviate the need for responses to be filed to the motions to dismiss. Therefore, it is in the interests of judicial economy for the court to screen the SAC under these circumstances.

### B. Standard

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal--

---

[2] The SAC refers to both the Eighth and Fourteenth Amendments. The Eighth Amendment's Cruel and Unusual Punishment Clause is made applicable to the States by the Due Process Clause of the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660 (1962).

1  (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii)

2  seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

3  § 1915(e)(2)(A), (B)(i)-(iii).

4          In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if

5  feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in

6  which a prisoner seeks redress from a governmental entity or officer or employee of a

7  governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify

8  cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--

9  (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks

10  monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

11          Dismissal of a complaint for failure to state a claim upon which relief may be granted is

12  provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and

13  28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a

14  complaint under these statutes, the court applies the same standard as is applied under Rule

15  12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule

16  12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232

17  F.3d 719, 723 (9th Cir. 2000) (citation omitted).

18          The court must accept as true the allegations, construe the pleadings in the light most

19  favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*,

20  395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less

21  stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9

22  (1980) (internal quotation marks and citation omitted).

23

1    A complaint must contain more than a "formulaic recitation of the elements of a cause of

2    action," it must contain factual allegations sufficient to "raise a right to relief above the

3    speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading

4    must contain something more … than … a statement of facts that merely creates a suspicion [of]

5    a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a

6    plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at

7    570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

8    A dismissal should not be without leave to amend unless it is clear from the face of the

9    complaint that the action is frivolous and could not be amended to state a federal claim, or the

10   district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d

11   1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

12   **C. Plaintiff's SAC**

13   **1. Eighth Amendment Deliberate Indifference to Serious Medical Needs**

14   Preliminarily, Plaintiff's Eighth Amendment claim is brought against Defendants

15   pursuant to 42 U.S.C. § 1983, which provides a mechanism for the private enforcement of

16   substantive rights conferred by the Constitution and federal statutes. To obtain relief pursuant to

17   section 1983, a plaintiff must establish a "(1) a violation of rights protected by the Constitution

18   or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under

19   color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991); *West v. Atkins*, 487

20   U.S. 42, 48-49 (1988). Plaintiff sufficiently alleges that each of the Defendants violated his rights

21   under the Eighth Amendment while acting under color of state law.

22   "The government has an 'obligation to provide medical care for those whom it is

23   punishing by incarceration,' and failure to meet that obligation can constitute an Eighth

1  Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th

2  Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

3        A prisoner can establish an Eighth Amendment violation arising from deficient medical

4  care if he can prove that prison officials were deliberately indifferent to a serious medical need.

5  *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two

6  elements: "the seriousness of the prisoner's medical need and the nature of the defendant's

7  response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other*

8  *grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). "A 'serious' medical need

9  exists if the failure to treat a prisoner's condition could result in further significant injury or the

10  'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429

11  U.S. at 104).

12        Plaintiff sufficiently alleges that he suffered from a serious medical need with respect to

13  his left testicle condition.

14        If the medical need is "serious," the plaintiff must show the defendant acted with

15  deliberate indifference to that need. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high

16  legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference

17  entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by

18  itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at

19  1060. Instead, deliberate indifference is only present when a prison official "knows of and

20  disregards an excessive risk to inmate health or safety; the official must both be aware of the

21  facts from which the inference could be drawn that a substantial risk of serious harm exists, and

22  he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

23

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted). "'[A] prisoner need not prove that he was completely denied medical care' in order to prevail" on a claim of deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (quoting *Lopez*, 203 F.3d at 1132), *overruled on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *Stewart v. Aranas*, 32 F.4th 1192, 1195(9th Cir. 2022) (citing *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)); *McGuckin*, 974 F.2d at 1060.

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

The court finds that Plaintiff states a colorable Eighth Amendment deliberate indifference to serious medical needs claim against each of the Defendants.

Contrary to the arguments made in the pending dismiss, Plaintiff's allegations go beyond mere negligence or medical malpractice. First, as to the MRP defendants, Plaintiff includes allegations that they were aware that Plaintiff needed a hydrocelectomy performed to alleviate

9

his condition; that Dr. Gaulin (whom Plaintiff alleges Defendants knew was not qualified to perform the procedure) did not properly perform the procedure the first time; that he failed to perform the procedure the next two times; and they still sent Plaintiff back to Dr. Gaulin. Then, after Dr. Gaulin finally referred Plaintiff to a urologist—Dr. Chen—who again requested permission to perform a hydrocelectomy, they waited nearly five months to approve the request. They did so knowing that each prior time that Dr. Gaulin failed to perform the correct procedure, Plaintiff's condition returned, causing him to suffer severe pain and swelling.

Therefore, as to the MRP defendants, Plaintiff alleges both the denial and delay of proper care for his serious medical condition. Plaintiff sufficiently alleges the delay resulted in further injury because when Dr. Chen was finally able to go in to perform the proper procedure, he discovered Plaintiff's left testicle needed to be removed, which could have been avoided had the correct procedure been performed at the outset.

The allegations against Dr. Gaulin similarly state an Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical need. After Dr. Gaulin failed to properly perform the hydrocelectomy the first time, Plaintiff went back to him on three more occasions where he failed to perform the recommended hydrocelectomy. It was only after he saw Plaintiff the fifth time and Plaintiff continued to have fluid accumulating in his left testicle that Dr. Gaulin referred Plaintiff to a urologist. Plaintiff sufficiently alleges that in failing to provide Plaintiff the proper care for his condition, Dr. Gaulin knew of and disregarded a serious risk to Plaintiff's health.

As noted above, these allegations, both as to the MRP defendants and Dr. Gaulin, go beyond mere negligence or medical malpractice, as Plaintiff sufficiently alleges that they knew

1  of and disregarded a serious risk to Plaintiff's health by not providing him with timely and

2  proper care.

3          The allegations also present more than just a difference of opinion as to Plaintiff's

4  treatment because he includes allegations that the course chosen—to continually see Dr. Gaulin

5  when he failed to perform the appropriate treatment and to delay approval for the proper

6  treatment by Dr. Chen—was medically unacceptable and in conscious disregard to Plaintiff's

7  health.

8          Therefore, Plaintiff should be allowed to proceed with his Eighth Amendment deliberate

9  indifference to serious medical needs claim against defendants Drs. Minev, Naughton, Adamson,

10  McKee, Alley, Landsman, Pena, and Gaulin.

11          **2. State Law Negligence and NIED Claims**

12          The State of Nevada has generally waived sovereign immunity for state tort actions in

13  *state court*.  Nev. Rev. Stat. § 41.031(1). In order to sue the State of Nevada or a state employee,

14  the plaintiff is required to sue the State of Nevada or appropriate political subdivision. Nevada

15  Revised Statute (NRS) §§ 41.031, 41.0337.   "In any action against the State of Nevada, the

16  action must be brought in the name of the State of Nevada on relation of the particular

17  department, commission, board or other agency of the State whose actions are the basis for the

18  suit." *Id.* § 41.031(2). In addition, to bring a tort action arising out of an action or omission with

19  the scope of a person's public duties or employment, a plaintiff must name the State or

20  appropriate political subdivision as a party defendant. NRS 41.0337.

21          "The Eleventh Amendment grants a State immunity from suit in federal court by citizens

22  of other states, U.S. Const. amend. XI, and by its own citizens as well[.]" *Walden v. Nevada*, 945

23  F.3d 1088, 1092 (9th Cir. 2019) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

1    With respect cases filed in *federal court*, the State of Nevada has not expressly waived its

2    immunity from suit conferred by the Eleventh Amendment.  NRS § 41.031(3).  Generally, the

3    State of Nevada and arms of the state cannot be sued in federal court.  *See O'Connor v. State of*

4    *Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) (holding that "Nevada has explicitly refused to waive its

5    immunity to suit under the eleventh amendment . . . The Supreme Court has made it clear that

6    section 1983 does not constitute an abrogation of the eleventh amendment immunity of the

7    states.").

8    Absent a waiver of Eleventh Amendment immunity, where the State of Nevada is an

9    indispensable party (such as under NRS 41.0337), the federal court does not have supplemental

10   jurisdiction over the state law tort claim because it does not have jurisdiction over the

11   indispensable party—the State. *See Hirst v. Gertzen*, 676 F.2d 1252, 1264 (9th Cir. 1982)

12   (holding that, where Montana law deemed governmental entities indispensable parties in a state

13   tort claim against a state employee, the federal court had no supplemental jurisdiction over the

14   state tort claim if it had no jurisdiction over the indispensable party).

15   For these reasons, Plaintiff's State law tort claims of negligence and NIED should be

16   dismissed without prejudice so that Plaintiff may assert them, if appropriate, in State court.

### III. MOTIONS TO DISMISS

18   **A. Dr. Pena**

19   First, Dr. Pena's motion to dismiss argues that Plaintiff fails to state an Eighth

20   Amendment claim because Plaintiff's allegations merely give rise to negligence or medical

21   malpractice. The court found, *supra*, that Plaintiff's allegations go beyond mere negligence or

22   medical malpractice or just a difference of opinion as to his treatment, and he states a plausible

23   claim under the Eighth Amendment.

1   Dr. Pena's next argument is predicated on a finding that Plaintiff is only asserting claims

2 sounding in professional negligence. Dr. Pena asserts that the claims must be dismissed because

3 Plaintiff did not file a complaint for professional negligence within Nevada's one year statute of

4 limitations. As stated, *supra,* Plaintiff does state an Eighth Amendment claim; therefore, this

5 argument is inapposite.

6   Dr. Pena's arguments that the State law tort claims should be dismissed or removed from

7 federal court are moot as the court has recommended those claims be dismissed without

8 prejudice so Plaintiff can assert them, if appropriate, in State court.

9   Dr. Pena also argues that he is entitled to qualified immunity; however, he does not

10 provide a basis for the application of qualified immunity. At this stage, the court has concluded

11 that Plaintiff states a colorable claim for relief under the Eighth Amendment, and that right was

12 clearly established. Therefore, Dr. Pena is not entitled to qualified immunity at this juncture.

13   Finally, Dr. Pena's motion to dismiss argues that he was never on the MRP, relying on a

14 declaration from his counsel. First, Dr. Pena's counsel would not have personal knowledge of

15 this asserted fact. A declaration should have been provided from Dr. Pena based on his own

16 personal knowledge. Moreover, a motion to dismiss may not rely on evidence outside of the

17 SAC. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Dr. Pena may meet and

18 confer with Plaintiff's counsel about this issue, or he may file a properly supported motion for

19 summary judgment, but this argument is not properly raised in a motion to dismiss under Rule

20 12(b)(6).

21   For these reasons, Dr. Pena's motion to dismiss should be denied.

22 ///

23 ///

**B. Drs. Naughton, Alley and Adamson**

Drs. Naughton, Alley, and Adamson sought dismissal *in the alternative* to their request that the court screen Plaintiff's SAC. The court has exercised its discretion to screen the SAC; therefore, their motion to dismiss should be denied as moot. In any event, the arguments raised in their motion to dismiss have been addressed by the court's screening of the SAC.

**IV. ORDER**

The court exercises its discretion to screen Plaintiff's SAC; therefore, insofar as Drs. Alley, Adamson, and Naughton have filed a motion for the court to screen the SAC (ECF No. 81), the motion is **GRANTED**. As a result, the parties' stipulation to stay the case pending screening of the SAC (ECF No. 85) is **DENIED AS MOOT**.

**V. RECOMMENDATION**

IT IS RECOMMENDED that Plaintiff be permitted to **PROCEED** with his Eighth Amendment deliberate indifference to serious medical needs claim in the SAC against defendants  Drs. Minev, Naughton, Adamson, McKee, Alley, Landsman, Pena, and Gaulin; however, Plaintiff's state law negligence and NIED claims should be **DISMISSED WITHOUT PREJUDICE** so that Plaintiff may assert them, if appropriate, in State court.

IT IS FURTHER RECOMMENDED that the motion to dismiss filed by Dr. Pena (ECF No. 77) and the alternative motion to dismiss filed by Drs. Alley, Adamson, and Naughton (ECF No. 81) be **DENIED**.

IT IS FURTHER RECOMMENDED that the Attorney General's Office should be directed to file a notice within 14 days of the date of any order adopting this Report and Recommendation indicating whether it will accept service on behalf of Drs. Minev, McKee, and Landsman, for whom it has not yet accepted service. If they cannot accept service on behalf of

Drs. Minev, McKee, or Landsman, they shall, also within 14 days of the date of any order adopting this Report and Recommendation, file the last known address under seal for any of these Defendants for whom it cannot accept service. The under seal filing shall be served on Plaintiff's counsel (but not Plaintiff directly) in accordance with Local Rule IA 10-5. It should be noted that Plaintiff has been granted an extension of time, until **November 4, 2024**, to serve the SAC on those Defendants who have not yet been served.

IT IS FURTHER RECOMMENDED THAT Defendants should be required to file a responsive pleading to the SAC within 21 days of the date of any order adopting this Report and Recommendation.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: September 13, 2024

Craig S. Denney
United States Magistrate Judge