UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EDWIN VELEZ,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL MINEV, et al.,<br><br>Defendants. | Case No. 3:21-cv-197-ART-CSD<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT<br>(ECF No. 143, 159, 163) |

Plaintiff Edwin Velez is an inmate in the custody of the Nevada Department of Corrections. He sues NDOC defendants and a non-NDOC physician named Paul E. Gaulin for deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Dr. Gaulin has moved for summary judgment, arguing in part that Mr. Velez's claim is barred by the statute of limitations. Judge Denney issued a Report and Recommendation ("R&R") recommending that Dr. Gaulin be granted summary judgment on the basis that Mr. Velez's claims against him are time-barred. Mr. Velez objected to the R&R, and Dr. Gaulin responded to Mr. Velez's objection. The Court now grants Dr. Gaulin's motion for summary judgment, albeit on different grounds than the R&R.

## I. Background

Dr. Gaulin has moved for summary judgment, arguing in relevant part that the statute of limitations had run by the time Mr. Velez was able to name him as a defendant, and that Mr. Velez cannot bring constitutional claims against him because he was not a state actor. Judge Denney has recommended granting Dr. Gaulin summary judgment based on the statute of limitations.

Mr. Velez named Dr. Gaulin as a defendant in this suit in February 2024, almost five years after Dr. Gaulin last saw him. For about three of those years, Mr. Velez was attempting to obtain Dr. Gaulin's name and address for service. In

his initial April 2021 complaint, Mr. Velez alleged that a "Doctor McCullin" at a Winnemucca hospital treated him several times and did not take due care, and that the lack of due care led to the amputation of Mr. Velez's testicle and violated Mr. Velez's Eighth Amendment rights. (ECF Nos. 6, 7.) Service was not ordered until July 2022, after screening and amendment. (ECF No. 23.) When service was unsuccessful, he sought assistance from "friends in the 'free world'" in locating the doctor who performed his hydrocelectomy. (ECF No. 31.) His friends having failed to find "McCullin," he moved the Court to compel NDOC to provide information about the defendant in October 2022. (ECF No. 31.) NDOC responded that they had no medical records of a "Defendant McCullin (McCullen)." (ECF No. 33.) In November 2022, Mr. Velez moved for appointment of counsel, arguing that he had "a genuine need for the appointment of counsel for the purpose of tracking down this key defendant." (ECF No. 34.) His motion was granted in July 2023 (ECF No. 40.) Pro bono counsel entered his appearance in January 2024 (ECF No. 49.) More than three years after the initial complaint, pro bono counsel filed the Second Amended Complaint ("SAC") naming Dr. Gaulin in June 2024 with leave of the Court. (ECF Nos. 55, 60, 61, 67, 54.) Echoing the initial complaint, the SAC alleged that, at Humboldt General Hospital (HGH") in Winnemucca, Dr. Gaulin improperly performed four hydrocelectomies on Mr. Velez, necessitating the amputation of his left testicle and violating his Eighth Amendment rights. (ECF No. 67.)

Mr. Velez has consistently alleged in his pleadings that Dr. Gaulin is a contract physician for NDOC. Dr. Gaulin states in his declaration that he's never been an NDOC employee or contractor. (ECF No. 143-2.) For their part, NDOC says that they do not directly contract with outside medical providers, but rather contract with a "network" that contracts with providers. (ECF No. 143-4.) Dr. Gaulin also says that he did not perform Mr. Velez's initial surgical consultation because of

any relationship he had with NDOC. Rather, he believes it was likely because he "was the surgeon available" onsite when Mr. Velez came to HGH in January 2018. (ECF No. 143-2 ¶ 9.) The NDOC consultation request forms in the record do not refer Mr. Velez specifically to Dr. Gaulin, except for one from November 2018 (ECF No. 144-2), but if that particular referral resulted in an appointment, there is no record of it. (ECF Nos. 144-3, 143-2.)

## II. Legal Standard

### A. Review of Reports and Recommendations

This Court now reviews Judge Denney's R&R under the Federal Magistrates Act, which provides that a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *Id.* A court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Under this binding authority, only the objected-to portions of the R&R must be reviewed. *See, e.g.*, *Fuller v. Lopez*, No. CV1905818PHXDWLCDB, 2021 WL 321234, at *3 (D. Ariz. Feb. 1, 2021) (citing S. Gensler, 2 Federal Rules of Civil Procedure, Rules and Commentary, Rule 72, at 422 (2018)). The district court may still review the portions of the R&R not subject to an objection if it chooses, as nothing "preclude[s] further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard." *Id.* at 154.

### B. Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting or disputing a fact "must support the assertion by … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *Id.*

In determining summary judgment, courts apply a burden-shifting analysis. A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmovant bears the burden at trial, as is the case here, the movant can meet its burden by either (1) presenting evidence to negate an essential element of the nonparty's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the non-movant will bear the burden of proof at trial. *See id.* at 323-24. After the movant has met its burden, the burden shifts to the nonmovant to come forward with specific facts showing a genuine issue of material fact remains for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although "[o]n summary judgment the inferences to be drawn from the underlying facts…must be viewed in the light most favorable to the party opposing the motion," *id.*, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586-87 (internal citations omitted). "The mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the non-moving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Angel v. Seattle-First Nat. Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)). Instead, to survive summary judgment, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing admissible evidence that shows a genuine issue for trial. *See Celotex,* 477 U.S. at 324.

**III. Mr. Velez's claim against Dr. Gaulin is not time-barred because he is entitled to equitable tolling.**

Although Mr. Velez's claim against Dr. Gaulin is untimely, the doctrine of equitable tolling saves it from being time-barred at the summary judgment stage.

Judge Denney concluded that Mr. Velez's claim against Dr. Gaulin accrued on May 19, 2019, when a urologist told Mr. Velez that a hydrocelectomy was improperly performed. The statute of limitations for 1983 actions brought in Nevada is two years. Nev. Rev. Stat. 11.190(4)(e); *see also Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989). Although Mr. Velez's initial complaint filed in April 2021 was timely, Mr. Velez did not file a pleading identifying Dr. Gaulin until June 7, 2024, over five years after his claims accrued. Furthermore, the June 2024 complaint did not relate back to the date of the timely filed initial complaint.

The Court accepts Judge Denney's analysis, except to add that the doctrine of equitable tolling saves Mr. Velez's claims from being time-barred at this stage. Mr. Velez did not raise equitable tolling and Judge Denney did not reach it. Nevertheless, considering that Mr. Velez is pro se and incarcerated, that he has contested the timeliness issue, and that substantial evidence relevant to the equitable tolling inquiry is already on the record, the Court finds it appropriate

to apply sua sponte. *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (summary judgment filings by a pro se litigant should be liberally construed).

When a plaintiff seeks to equitably toll the limitations period in a Section 1983 claim, the plaintiff must demonstrate that "[1] he or she acted diligently in pursuing his or her claim and [2] that extraordinary circumstances beyond his or her control caused his or her claim to be filed outside the limitations period." *Fausto v. Sanchez-Flores*, 482 P.3d 677, 682 (Nev. 2021); *Hardin v. Straub*, 490 U.S. 536, 543–44 (Nev. 1989). Where relevant, the Nevada Supreme Court also looks to nonexclusive factors such as the plaintiff's knowledge of the relevant facts, the plaintiff's reliance on authoritative statements that misled them about the nature of their rights, any deception or false assurances on the part of party against whom the claim is made, the prejudice to the defendant that would actually result from delay during the time the limitations period is tolled, and "any other equitable considerations appropriate in the particular case." *Fausto*, 482 P.3d at 682 (citing *Copeland v. Desert Inn Hotel*, 673 P.2d 490, 492 (Nev. 1983)).

The record shows that Mr. Velez has been attempting to name Dr. Gaulin since he filed his initial, timely complaint. Not knowing his name or address, he attempted to locate Dr. Gaulin by asking friends outside the prison for help, by moving the Court to compel the information from NDOC, and by seeking Court-appointed pro bono counsel. (ECF No. 31, 34.) The docket shows that between the failure of service of process and the SAC naming Dr. Gaulin, Mr. Velez consistently and diligently used the means available to him as an incarcerated and *pro se* plaintiff to search for Dr. Gaulin's name and address. Many of these efforts went through the Court, prolonging the litigation and Mr. Velez's expectations on the premise that if he could name Dr. Gaulin, his claims against him could be heard.

At minimum, there is a genuine issue of material fact as to Mr. Velez's diligence amid the extraordinary circumstances preventing him from learning Dr. Gaulin's name and address. That is sufficient to preclude summary judgment on statute of limitations grounds.

**IV. Dr. Gaulin cannot be sued under Section 1983 because he did not act under color of state law.**

Although Mr. Velez's claim against Dr. Gaulin is not time-barred, it fails because Mr. Velez has not brought evidence showing a genuine issue of material fact remaining for trial as to whether Dr. Gaulin acted under color of state law. Mr. Velez's only claim against Dr. Gaulin is an Eighth Amendment claim brought under Section 1983, which provides a cause of action against those who violate the federal constitution under color of state law. 42 U.S.C. § 1983. Since there is no dispute of material fact that Dr. Gaulin is a private actor, his motion for summary judgment must be granted in its entirety.

Generally, private parties do not act under color of state law. *See O'Handley v. Weber*, 62 F.4th 1145, 1155–56 (9th Cir. 2023) (stating that only in "exceptional cases" will a private entity be treated as a state actor for constitutional purposes), cert. denied, 144 S. Ct. 2715 (2024). In analyzing state action, courts apply the two-step framework developed in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), asking, first, "whether the alleged constitutional violation was caused by the 'exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,'" and second, "whether 'the party charged with the deprivation [is] a person who may fairly be said to be a state actor.'" *O'Handley*, 62 F.4th at 1156 (quoting *Lugar*, 457 U.S. at 937).

To satisfy the state actor requirement, a private party must meet one of four tests: "(1) the public function test, (2) the state compulsion test, (3) the nexus test

and (4) the joint action test." *O'Handley*, 62 F.4th at 1157. "These tests are interrelated, and they are designed to answer the same key question: whether the conduct of a private actor is fairly attributable to the State." *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1109 (9th Cir. 2022).

The claim against Dr. Gaulin does not meet "public function" test, because medical services are not a function that is "traditionally and exclusively reserved to the state," such as running elections or operating a company town. *Prager Univ. v. Google LLC*, 951 F.3d 991, 997–98 (9th Cir. 2020). It does not meet the "state compulsion" test, as there is nothing to suggest that NDOC or another government entity threatened or imposed incentives that "essentially compel[led]" him to "comply with its requests." *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 759 (9th Cir. 2024) (citations and internal quotations omitted), cert. denied, 145 S. Ct. 2846 (2025) (quoting *O'Handley*, 62 F.4th at 1158).

Mr. Velez's theory that Dr. Gaulin was an NDOC contract physician sounds in the nexus and joint action tests. S*ee Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991). A plaintiff may satisfy both the nexus and joint action tests by identifying "a sufficiently close nexus between the state and the private actor," such that the private action may be treated as an action of the State, or where the State is so interwoven with the private action that the State was a joint participant in the action. *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (2020) (quoting *Jensen v. Lane Cty.*, 222 F.3d 570, 575 (9th Cir. 2000)).

Contract physicians may qualify as state actors when they have a sufficiently cooperative relationship with the prison. *West v. Atkins*, 487 U.S. 42, 50–57 (1988); *see id.* In *West*, the defendant, a physician under a part-time contract to provide medical services to inmates, examined a prisoner for an orthopedic consultation at the on-site prison hospital. In determining that the doctor acted under color of state law for purposes of § 1983, the Supreme Court rejected a

formalistic distinction between a state employee and a contractor, noting that "[i]t is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State." *Id.* at 55-56. The defendant's actions were attributable to the state because he had a cooperative relationship with prison authorities, and it was only physicians authorized by the state such as him to whom the inmate could turn. *Id.*

Against the background of the presumption that privately employed individuals do not act under color of state law, courts in the Ninth Circuit have generally concluded that private doctors, nurses, and hospitals are not state actors just because they provide one-off medical treatment to an inmate. Without a contractor relationship, additional circumstances would be needed to show that the physician has assumed the state's obligation to provide inmates with medical care. *See, e.g., Jones v. Adventist Health Delano Hosp.*, No. 1:25-CV-000197-SAB (PC), 2025 WL 1474397, at *3–4 (E.D. Cal. May 22, 2025), report and recommendation adopted, No. 1:25-CV-0197 JLT SAB (PC), 2025 WL 1727126 (E.D. Cal. June 20, 2025); *Gonzalez v. James*, No. 1:23-CV-01505-JLT-SAB (PC), 2025 WL 318296, at *3 (E.D. Cal. Jan. 28, 2025), report and recommendation adopted, No. 1:23-CV-01505 JLT SAB (PC), 2025 WL 604402 (E.D. Cal. Feb. 25, 2025); *Felix v. Casey*, No. 2:18-cv-3185-KJM-AC-P, 2021 WL 2209828, at *2 (E.D. Cal. June 1, 2021); *Probst v. Adams Cty. Sheriff's Dep't*, No. 1:20-cv-00032-DCN, 2021 WL 1554064, at *3 (D. Idaho Apr. 19, 2021).

The uncontroverted evidence in this case shows that Dr. Gaulin did not have a relationship with NDOC. As a surgeon at HGH, he saw a general population of patients. There is no indication that NDOC arranged Mr. Velez's initial appointment with Dr. Gaulin specifically, and Dr. Gaulin's supposition that he was merely the surgeon present at HGH at the time when Mr. Velez came to the

hospital may well be true. Neither are the return visits enough to establish a cooperative relationship between the state and Dr. Gaulin. Nothing in the record shows that NDOC or Dr. Gaulin considered themselves to have a relationship after that first appointment, and it could be that HGH returned Mr. Velez to Dr. Gaulin since he had treated him before in connection with the same medical problem. While Mr. Velez says in his pleadings that Dr. Gaulin is a contract physician, he provides no evidence to show this, and a non-moving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

To be sure, the distinction between a contract physician and an alleged subcontractor like Dr. Gaulin is murky. Those like Dr. Gaulin may be the only physicians to whom people in Mr. Velez's position may turn, depending on their medical complaint. As the Supreme Court said in *West*, a formalistic limit upon 1983 liability risks leaving the state "free to contract out all services which it is constitutionally obligated to provide and leave its citizens with no means for vindication of those rights, whose protection has been delegated to 'private' actors, when they have been denied." *West*, 485 U.S. at 56 n. 14. Nevertheless, binding authorities also direct that private entities can only be treated as state actors in "exceptional cases." *O'Handley*, 62 F.4th at 1155–56. Considering this directive to limit state action to only the private entities closest to the state, the Court finds that Mr. Velez has failed to show there is a genuine dispute of material fact regarding Dr. Gaulin's status as a state actor. Although Mr. Velez argues that Dr. Gaulin is a contractor, the uncontroverted evidence shows that Dr. Gaulin is neither a contractor nor as intertwined with the prison system as the contractor in *West*. Mr. Velez has not met his burden to avoid summary judgment.

**V. Conclusion**

IT IS THEREFORE ORDERED that the Court DECLINES TO ADOPT the R&R. (ECF No. 159.)

It is FURTHER ORDERED that Plaintiff's motion to file a reply to his objection to the R&R is DENIED AS MOOT. (ECF No. 163.)

It is FURTHER ORDERED that the Court GRANTS Defendant Paul Gaulin's motion for summary judgment. (ECF No. 143.)

DATED: August 10, 2026

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE